FILED
IN CLERK'S OFFICE
U.S. District Court E.D.N.Y.
9/13/2024
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JAMES WALL,                                      :

                  Petitioner,         :         **<u>MEMORANDUM DECISION</u>**

           - v -                     :         13-CV-2803 (DC)

STATE OF NEW YORK,                           :

                Respondent.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:         JAMES WALL
                     Petitioner *Pro Se*
                     DIN 09A6364
                     Green Haven Correctional Facility
                     P.O. Box 4000
                     594 Rt. 216
                     Stormville, NY 12582-0010

                     RAYMOND A. TIERNEY, Esq.
                     District Attorney, Suffolk County
                     By:    Glenn Green, Esq.
                            Assistant District Attorney
                     200 Center Drive
                     Riverhead, NY 11901
                            Attorney for Respondent[1]

---

[1]      Pursuant to Federal Rule of Civil Procedure 25(d), Raymond A. Tierney is substituted for former District Attorney Thomas J. Spota.  Fed. R. Civ. P. 25(d).

CHIN, Circuit Judge:

On November 13, 2009, following a jury trial, petitioner James Wall was convicted in the Supreme Court of New York, Suffolk County (Doyle, *J.*), of two counts of second-degree murder (felony murder) in violation of New York Penal Law ("NYPL") § 125.25(3), two counts of first-degree kidnapping in violation of NYPL § 135.25, and one count of second-degree kidnapping in violation of NYPL § 135.20.  Dkt. 11-19 at 344, 513-14.  On December 14, 2009, the court sentenced Wall to an indeterminate period of imprisonment with a minimum of 25 years' to life imprisonment on each of the second-degree murder charges, to run consecutively; and to an indeterminate period of 25 years' to life imprisonment on the kidnapping charges, to run concurrently, followed by a period of five years of post-release supervision.  Dkt. 11-21 at 1, 45-47.

Wall was tried together with a co-defendant, Darren Lynch, who was convicted of first-degree murder, felony murder, and kidnapping.  Dkt. 11-29 at 4-5.  He was sentenced on December 14, 2009, principally to life imprisonment without parole. *Id.*

The Appellate Division, Second Department affirmed Wall's conviction, *People v. Wall*, 938 N.Y.S.2d 449 (2d Dep't 2012) ("*Wall I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Wall*, 968 N.E.2d 1009 (N.Y. 2012) (Smith, *J.*) ("*Wall II*").

2

On May 9, 2013, proceeding *pro se*, Wall filed a petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254 in this Court.  Dkt. 1.  Wall contends that (1) he received ineffective assistance of counsel on various grounds; (2) the trial court erred by failing to instruct the jury on circumstantial evidence; (3) he was deprived of a fair trial when the prosecution failed to provide him with a copy of a statement Lynch's sister Erin Lynch ("Erin") made to the police that was used during her cross-examination at trial; (4) the charges of kidnapping and felony-murder violated the double jeopardy clauses of both the New York and federal constitutions; (5) the trial court should have severed his trial from Lynch's trial; and (6) the prosecution improperly coerced a witness to testify.  *See generally id.*  Respondent opposed the Petition on July 16, 2013.  Dkt. 5.  It substantively opposed Wall's second through sixth claims, but it requested that the Court stay the Petition so that Wall could exhaust his ineffective assistance of counsel claim in state court.  Dkt. 5-1 at 12.

By letter dated November 10, 2014 and received by the Court on November 14, 2014, Wall moved to hold the Petition in abeyance so that he could exhaust certain claims in state court.  Dkt. 8.  Respondent opposed Wall's motion on November 21, 2014.  Dkt. 9.  On September 30, 2015, the Court (Feuerstein, *J.*) denied the motion but granted Wall leave to file a reply to Respondent's opposition to the Petition. Dkt. 10.

On November 6, 2015, proceeding *pro se*, and while the Petition remained pending in this Court, Wall moved in state court to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 (the "Section 440 Motion").  Dkt. 45-1.  The Supreme Court, Suffolk County (Braslow, *J.*), denied Wall's Section 440 Motion in its entirety on December 28, 2015.  Dkt. 45-3 at 1-3.  The Appellate Division denied Wall's application for leave to appeal.  Dkt. 45-6 at 1.

On June 10, 2016, this Court (Feuerstein, *J.*) ordered that the Petition be stayed to allow Wall to exhaust his ineffective assistance claim.  Dkt. 12 at 3.  It is apparent from the record that the Court was unaware that Wall had already brought those claims in his Section 440 Motion in November 2015.  In any event, on November 1, 2017, Wall moved to reopen the case.  Dkt. 15.  Respondent did not oppose the motion.  *See* Dkt. 20.  By order dated September 26, 2018, the Court reopened the case.  Dkt. 24 at 2.

In papers dated July 30, 2019 and received by the Court on August 5, 2019, Wall moved for a second order holding the Petition in abeyance so that he could "exhaust his claim of yet another example of ineffective assistance of counsel in state court."  Dkt. 29 at 1.  Respondent did not respond to the motion.  *See* Dkt. 30 at 1.  On October 4, 2019, the Court denied Wall's motion to hold the Petition in abeyance but ordered that the case be closed with leave to reopen upon ten days' notice "by no later than October 9, 2020."  *Id.*  Wall subsequently filed two motions for an extension of time

4

to reopen the case, *see* Dkt. 32, 34.  On June 30, 2021, the case was reassigned to Judge Gujarati.  Dkt. Order Dated 6/30/2021.  The Court granted Wall three more extensions of time to reopen the case: on July 12, 2021, March 29, 2022, and June 14, 2022.  Dkt. Orders Dated 7/12/2021, 7/12/2021, 3/29/2022.

On October 20, 2022, Wall moved to reopen the case.  Dkt. 39.  On May 25, 2023, the Court directed Respondent to show cause why Wall's motion should not be granted.  Dkt. Order Dated 5/25/2023.  Respondent answered on June 6, 2023.  Dkt. 40.  On June 8, 2023, the Court granted Wall's motion to reopen the case.  Dkt. Order Dated 6/8/2023.

On September 20, 2023, Wall filed a motion to amend the Petition "to include the additional claims raised in the [Section 440 Motion]."  Dkt. 43 at 3.  On June 28, 2024, the case was reassigned to the undersigned.  On July 10, 2024, I deemed the Petition amended to include the claims that Wall brought in his Section 440 Motion.  Dkt. 44.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

### I.      *The Facts*

The evidence at trial established the following:

In July 2008, Lynch wanted to buy cocaine.  He reached out to a friend, Jason Finnerty to ask whether Finnerty knew anyone who sold cocaine.  Dkt. 11-17 at

5

120-23, 155-56.  After making some calls, Finnerty let Lynch know that some men from the Bronx would sell him a kilogram of cocaine for $30,000.  *Id.* at 122-24, 204-08, 373. On the evening of July 16, 2008, Finnerty arrived at Lynch's family home in Coram, New York, where Lynch, Erin, and Wall were waiting to complete the drug deal.  *Id.* at 126, 128, 146.  Wall and Lynch were "inseparable," and because Lynch did not have a driver's license, Wall frequently drove Lynch around.  *Id.* at 121.

Meanwhile, Joseph O'Dierno, one of the deal's middlemen, picked up a friend named Ricardo McKoy, another middleman who had helped arrange the deal between Lynch and the men in the Bronx.  *Id.* at 204-08, 210.  O'Dierno and McKoy drove to C.W. Post's Brookville campus to meet Jairo Santos, who served as the direct link to the men in the Bronx and had also helped coordinate the transaction.  *Id.* at 206, 208, 212-13, 327.  The men from the Bronx were also in the parking lot, and the two groups left C.W. Post for Coram, with O'Dierno and McKoy riding in O'Dierno's car and Santos and the men from the Bronx following in the Caravan and Toyota.  *Id.* at 216.

Once everyone arrived at Lynch's family home, Lynch paid the men and received the package of cocaine in exchange.  *Id.* at 225-28.  Shortly after the men from the Bronx left Coram, Lynch opened the package.  *Id.* at 229.  When it did not break in the way he anticipated and instead fell apart, Lynch smelled and tasted the contents and exclaimed "this is not fucking coke."  *Id.* at 229-30.  McKoy went outside to alert

O'Dierno and Santos that they had received fake cocaine. *Id.* at 230. Lynch then pressed Santos on where the other men had gone. Santos responded that he was supposed to meet them back at C.W. Post. *Id.* Lynch told Santos to "[g]et on the fucking phone and tell them that you are going to meet them at the fucking school." *Id.* at 231. Lynch, who appeared "mad" and "anxious," went inside and pulled out a gun. *Id.* at 231-32. He pointed the gun at O'Dierno, McKoy, and Santos and said "[g]et the fuck in the truck," referring to O'Dierno's Escalade. *Id.* at 232.

Wall arrived at the entrance to the house. *Id.* Lynch told Wall that he did not want Wall to get involved, but Wall replied, "fuck these guys." *Id.* at 232-33. Lynch told Wall to get a gun and get into the truck. *Id.* at 233. Wall complied. *Id.* Once Lynch, Wall, O'Dierno, Santos, and McKoy were in the car, O'Dierno began driving the Escalade at Lynch's direction. *Id.* Wall, who was riding in the passenger seat, threatened the men in the second row, saying that "you [are] gonna see how we get them," and pointed a gun at McKoy. *Id.* at 234-35. Lynch said that if he did not get his money back, he was "going to fucking kill" O'Dierno, Santos, and McKoy. *Id.* at 235.

Once the car arrived in Commack on the way to C.W. Post, McKoy attempted to open the door "to try to make a run for it" but Lynch instructed O'Dierno to lock the doors. *Id.* at 236. Shortly thereafter, O'Dierno stated that he was tired from driving and suggested that McKoy take over. *Id.* Lynch assented but required the men to switch seats without getting out of the car. *Id.* The car pulled over and Lynch,

7

pointing a gun at McKoy, said "You're going to fucking switch seats and you're going to cross over [O'Dierno]. But don't get the fuck out of the truck." *Id.* at 237.

McKoy began driving the car on the Long Island Expressway but was nervous and shaking while driving. *Id.* Lynch again threatened McKoy with the gun if McKoy did not "drive [the] truck straight." *Id.* He also instructed Santos to call the men from the Bronx to make sure they would be at C.W. Post when the Escalade arrived, and after a few calls it became apparent that the men were going back to the Bronx. *Id.* at 238-39. Lynch became angry and demanded to see what O'Dierno, Santos, and McKoy had in their pockets. *Id.* at 239. When Lynch discovered that O'Dierno had some of the money in his pocket, Lynch smacked him in the head. *Id.* at 239-40, 322-23. Lynch proceeded to take all the men's cell phones. *Id.* at 241-42.

As McKoy continued to drive towards Queens, Lynch called someone on the phone, asking about "stuff underneath the couch," duct tape, the "thing with the strap," and t-shirts and gloves. *Id.* at 242. Wall asked the same person for "stuff to sniff so when we kill these guys we don't give a fuck." *Id.* The car arrived outside a residence in Queens. *Id.* at 243. Lynch instructed McKoy to go to the back of the truck while Wall held a gun to McKoy. *Id.* at 244. McKoy joined Santos in the backseat while Wall held the two men at gunpoint. *Id.* at 244-45.

A woman, who later was identified as Lynch's girlfriend Leah Reynolds, came out of the building and handed Lynch a black garbage bag, from which Lynch

retrieved a white bulletproof vest, t-shirts, gloves, and guns.  *Id.* at 246.  Lynch handed a

t-shirt, one of the guns, and a pair of red and white gloves to Wall.  *Id.* at 246-47.  While

Reynolds was handing the items to Lynch and Wall, Wall turned to McKoy and said,

"don't fucking look at her," and "I hit you in the fucking face with this gun.  Turn the

fuck around."  *Id.* at 247.  Lynch, Wall, and Reynolds proceeded to consume cocaine

together.  *Id.* at 248-49.  Then, at Lynch's instruction, Santos directed Lynch to where the

men in the Bronx lived.  *Id.* at 252.  While Lynch drove to the Bronx, Wall continued

holding a gun to McKoy and Santos.  *Id.*  During the drive, Santos was "trying to signal

to" McKoy, asking McKoy if he had any weapons on him.  *Id.* at 253.

       Lynch ordered the men out of the truck once they arrived at the Bronx

apartment building.  *Id.* at 256.  Wall enforced the command by holding the men at

gunpoint.  *Id.*  Once the men were out of the car, Lynch ordered Santos to show him the

apartment building where the men lived.  *Id.*  In the meantime, Wall watched O'Dierno

and McKoy and assured Lynch that "[t]hey're not going nowhere."  *Id.* at 257.  Lynch felt

that they were parked too far away from the building, so the men returned to the car

and found a closer parking spot.  *Id.* at 257-58.  Lynch ordered McKoy to exit the car and

wait in front of the building for the men, because he and Wall, as white men, "look[ed]

like [] cops," and the men would know that Lynch was there if Santos waited.  *Id.* at 259-

60.

As McKoy was doing as he was told and standing by the apartment door, he noticed an alleyway and ran down it, hiding behind some bushes to get away from the truck. *Id.* at 263-64. McKoy then ran down a block and jumped into a cab, taking it to the subway station. *Id.* at 266-67.[2]

After McKoy began running, Lynch circled the block "two or three times" looking for McKoy. Dkt. 11-19 at 252. At around 2:30 in the morning, because they had been waiting for close to an hour and a half, Lynch decided to drive back to Queens. *Id.* Lynch drove himself, Wall, Santos, and O'Dierno back to his home in Queens. *Id.* at 253. The four men consumed more cocaine and marijuana together. *Id.* Lynch told Wall that he "didn't know what [his] next course of action was going to be," and that Lynch "didn't need [Wall] to be there" because "this [was] [Lynch's] problem," and that Lynch would "rather [Wall] leave." *Id.* Lynch called Erin and asked her to come to Queens, but she took two hours to arrive. *Id.* at 254. Once Erin arrived, Wall left. *Id.*

Lynch brought O'Dierno and Santos back to his apartment in Middle Village, Queens. Dkt. 11-18 at 301. He duct-taped their legs together so they could not move, and he unsuccessfully tried to get his money back. *Id.* Lynch then shot both men in the head with a .357 revolver. *Id.* at 302. O'Dierno died immediately, but Santos did

---

[2]    He took the train to Manhattan and then caught a train to Farmingdale, where got a cab home to Wyandanch. *Id.* at 270, 357. It was about 7:00 in the morning on July 17, 2008 when he returned. *Id.* at 270-71. McKoy told his friend Donovan Bostick, a student at C.W. Post, what happened to him the night of July 16. *Id.* at 274.

not die at first. *Id.* Lynch proceeded to beat Santos with a spiked club and shot Santos with 40- and 22-caliber weapons, killing him. *Id.* Lynch then transported their bodies to the bathroom tub and dismembered them with a hacksaw, cutting off their arms, legs, and heads. *Id.* He placed the body parts into plastic bags and Tupperware bins, put them back in his car, and drove them out to Long Island to bury them in a sump as well as in his parents' backyard at 33 Summercrest Lane. *Id.*

On July 17, 2008, Gregory Santos ("Gregory"), Santos's father, could not reach his son. Dkt. 11-17 at 56. Gregory and his daughter drove to C.W. Post and looked for Santos, asking if anyone had seen him. *Id.* at 57. At 3:00 in the morning, they went to the Old Brookville Police Station and the police began a search for Santos. *Id.* at 57-58. Detective Kevin Lebrecht was working on Friday, July 18, 2008, when he received a missing person report for Santos. Dkt. 11-17 at 84-85. Lebrecht went to C.W. Post to talk to students. *Id.* at 88. Lebrecht subpoenaed cell phone records which indicated that Santos had been in "constant contact" with an individual named Randy "Rico" McKoy. *Id.* at 96-97.

On July 23, 2008, McKoy went to the Old Brookville Police Department. *Id.* at 100, 112. Detective Lebrecht interviewed McKoy, who said he knew Santos. *Id.* at 102. McKoy led the police to Lynch's home in Coram. *Id.* at 104-05, 107, 172-73, 285-86. McKoy was able to identify the gun used by Lynch, *id.* at 287, as well as O'Dierno's Escalade, *id.* at 289. Detectives also started investigating O'Dierno's disappearance. *Id.*

11

at 171-74.  The investigation led police to 79-42 68th Avenue in Middle Village, Queens.
*Id.* at 177-78.  The police began surveilling the Middle Village address in addition to
Lynch's home.  *Id.*  On July 24, 2008, at around 11:35 p.m., police observed an individual
leaving a gray Nissan Altima and carrying a small package.  Dkt. 11-18 at 646.  The
license plate of the Altima was registered to Wall.  *Id.* at 648.  On July 26, 2008, police
observed the same car parked outside from 11:30 p.m. until about 12:07 a.m.  Dkt. 11-17
at 476-77.

On July 30, 2008, at 2:14 a.m., detectives observed Lynch walking down
the street outside 79-42 68th Avenue with garbage bags.  Dkt. 11-18 at 5-9.  Lynch
disposed of the bags in a can on the corner of the street.  *Id.* at 9-10.  Shortly after 4:00
a.m., the detectives retrieved the bags.  *Id.* at 11.  The contents appeared to be narcotics
packaging with cocaine residue.  *Id.* at 14-15.  Subsequent testing of the residue came
back positive for cocaine.  *Id.* at 15-16.  Shortly after 11 p.m. that day, police executed a
search warrant on Lynch's Queens apartment.  *Id.* at 21-23.  Police observed a revolver
laying on the floor.  *Id.* at 24.  Detective Sheehan handcuffed Lynch, who was lying
prone on the floor, and stood him up.  *Id.*  Police transported Lynch to the 104th
Precinct, where he was placed in an interview room.  *Id.* at 24-25.  Lynch confessed to
the murders, detailed how and where he murdered O'Dierno and Santos, and wrote a
letter to his family admitting and taking sole responsibility for the crimes.  *Id.* at 306-08.

On the morning of July 31, 2008, Detective Frendo went to Wall's parents' home in Coram to locate Wall.  *Id.* at 39.  Frendo learned that Wall was attending a funeral in Florida.  *Id.* at 40.  Later that afternoon, Wall left a voicemail for Frendo identifying himself.  *Id.* at 41.  Wall was arrested on August 4, 2008 in connection with O'Dierno and Santos's disappearance and murders.  *Id.* at 70-72.

## II.    *The State Court Proceedings*

### A.    *The Indictment and Pre-trial Proceedings*

A 2008 Suffolk County indictment charged Wall and Lynch with multiple counts of first-degree murder, second-degree murder, first-degree kidnapping, and second-degree kidnapping.  Dkt. 11-2 at 1-8.

On September 11, 2009, Wall moved to sever his trial from Lynch's trial pursuant to CPL § 200.40.  Dkt. 11-8 at 2-9.  Wall argued, *inter alia*, that their defenses would be irreconcilable and that Lynch's written statement incriminated Wall and presented a confrontation issue.  *See generally id.*  On September 23, 2009, the trial court (Doyle, *J.*) held a conference on the severance issue.  Dkt. 11-10 at 1.  The court denied the motion in all respects on October 1, 2009, finding that whether the defenses were irreconcilable was speculative, that Lynch's statement was not "in fact exculpatory," and that Wall would not suffer prejudice from any cross-examination of Lynch.  Dkt. 11-11 at 1-2.

B.    *Trial*

Trial began on October 20, 2009, with jury selection.  Dkt. 11-14 at 1-2.  The

jury heard testimony from the Gregory, Dkt. 11-17 at 52-59; Antonia Green, Santos's

classmate, *id.* at 61-69; Detective Kevin Lebrecht, *id.* at 83-116; Jason Finnerty, *id.* at 118-

67; Detective James Madden, who assisted with the missing person search, *id.* at 169-98;

Dkt. 11-18 at 96-143; McKoy, Dkt. 11-17 at 202-407, 410-66; Detective James Breirdon, *id.*

at 467-84; Detective Timothy Sheehan, Dkt. 11-18 at 3-37; Detective Phil Frendo, *id.* at

37-77; Renada Lewis, an employee of Verizon Wireless, *id.* at 77-96; Barbara Cooper, an

employee of T-Mobile, *id.* at 146-56; Detective Christopher Breuer, Dkt. 11-18 at 156-63;

Donald Doller, a forensic scientist, *id.* at 165-265; Dkt. 11-19 at 6-32; Detective Robert

Chase, *id.* at 265-363; Roy Sineo, a forensic scientist, *id.* at 363-428; Detective Jeffrey

Bottari, *id.* at 428-46; Jeffrey Luber, a forensic scientist, *id.* at 446-61; Daniel Cheswick, a

forensic scientist, *id.* at 461-94; George Krivosta, a forensic scientist, *id.* at 33-56, 69-87;

and Dr. Stuart Dawson, a medical examiner, *id.* at 87-139.  The prosecution rested on

November 10, 2009.  *Id.* at 141, 144.

Lynch presented a defense case, as Erin testified for Lynch.  *Id.* at 151-222.

Lynch also testified on his own behalf.  *Id.* at 224-341.  Wall did not present a defense

case.  *Id.* at 342.  The prosecution did not present a rebuttal case.  *Id.*  On November 13,

2009, the jury found Wall guilty of two counts of second-degree murder, two counts of

first-degree kidnapping, and one count of second-degree kidnapping. *Id.* at 344, 509,

513-14.

C.    **Sentencing**

On December 14, 2009, the trial court sentenced Wall.  Dkt. 11-21 at 1, 34.

The court sentenced Wall to an indeterminate term of imprisonment of a minimum of

25 years' imprisonment and a maximum of life on each felony murder count, to run

consecutively, to an indeterminate term of 25 years' to life imprisonment on the two

first-degree kidnapping counts, and to a determinate sentence of 25 years'

imprisonment on the second-degree kidnapping count.  *Id.* at 45-47.  The sentences on

the three kidnapping counts were to run concurrently with the sentences for felony

murder.  *Id.* at 47.

D.    **Direct Appeal**

Wall appealed his conviction to the Appellate Division, Second

Department, asserting the following claims: (1) the evidence was legally insufficient; (2)

the trial court's failure to charge the jury on circumstantial evidence was prejudicial

error and defense counsel was ineffective for not requesting that charge; (3) Wall was

denied a fair trial by the court's denial of trial counsel's request to see a statement Erin

made to the police; (4) the kidnapping and felony murder counts were multiplicitous

and violated the double jeopardy clause; and (5) the sentence was excessive.  Dkt. 11-28

at 2-3.

15

On February 14, 2012, the Appellate Division affirmed Wall's conviction. *Wall I*, 938 N.Y.S.2d at 449.  The Appellate Division found that: (1) Wall's sufficiency claim was unpreserved for appellate review, but was without merit in any event; (2) Wall's argument that he was entitled to a charge on circumstantial evidence was also unpreserved for appellate review, but was without merit in any event; (3) Wall was entitled to a copy of Erin's statement, but the error was harmless; (4) Wall's argument that the second-degree murder and first-degree kidnapping charges were multiplicitous was unpreserved for appellate review, but was without merit in any event; and (5) the sentence imposed was not excessive.  *Wall I*, 938 N.Y.S.2d at 449-50.[3]  On April 11, 2012, the Court of Appeals (Smith, *J.*) denied leave to appeal.  *See Wall II*, 968 N.E.2d at 1009.

### E.      State Collateral Review

On November 6, 2015, after filing the Petition in this Court, Wall, proceeding *pro se*, moved to vacate the judgment of conviction under CPL § 440.10 in state court, reasserting some claims from his direct appeal and asserting new claims. Dkt. 45-1.[4]  In his Section 440 Motion, Wall claimed that (1) trial counsel was ineffective for failing to call Lynch's girlfriend, Leah Reynolds, as a witness, and for failing to request a circumstantial evidence charge; and (2) the prosecution engaged in misconduct for failing to turn over a written statement used to cross-examine Erin.  *Id.*

---

[3]      Wall does not raise the excessive sentence issue in the Petition.
[4]      I discuss the Petition in more detail in *supra* Part III.

at 1-53.[5]  Respondent opposed the Section 440 Motion on December 11, 2015.  Dkt. 45-2

at 4.  On December 28, 2015, the Suffolk County Supreme Court (Braslow, *J.*) denied

Wall's motion to vacate the judgment in all respects.  Dkt. 45-3 at 1-3.

## III.    *The Petition*

In the Petition, Wall seeks habeas relief on the grounds raised in his direct

appeal and in his Section 440 Motion.  *See generally* Dkt. 1.  Respondent opposed the

Petition on July 16, 2013.  Dkt. 5.  Following a protracted series of motions to close and

reopen the case over the course of nearly ten years as detailed above, the case was

reassigned to me.  I deemed the Petition amended to include the claims Wall raised in

his Section 440 Motion.  Dkt. 44.

The amendment of the Petition to include the claims that Wall introduced

in his Section 440 Motion presents an issue of timeliness -- *i.e.*, whether the claims in the

Section 440 Motion relate back to the original Petition for the Antiterrorism and

Effective Death Penalty Act ("AEDPA") statute of limitations purposes.  Under Federal

Rule of Civil Procedure 15, which governs AEDPA's one-year statute of limitations,

"[a]n amendment of a pleading relates back to the date of the original pleading when . . .

the claim or defense asserted in the amended pleading arose out of the conduct,

---

[5]      Wall raised two additional claims in his Section 440 Motion that I do not address in detail because they lack any factual basis and must be dismissed.  In Point IV of the Motion, Wall asks the state court "to hear [his] ineffective assistance claims on the merits."  Dkt. 45-1 at 27, 29.  In Point V, Wall reiterates the standard for ineffective assistance of counsel claims.  *See id.* at 30-32.  I agree with Respondent that these claims "do not present factual claims for relief."  Dkt. 45-2 at 3.  Accordingly, the Court dismisses those claims.

17

transaction, or occurrence set forth . . . in the original pleading." *Fama v. Comm'r of Corr. Serv.*, 235 F.3d 804, 815 (2d Cir. 2000). Relation back depends on the existence of a "common core of operative facts uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005).

The two claims that Wall brought for the first time in his Section 440 Motion are: (1) trial counsel was ineffective for failing to call Leah Reynolds and (2) the prosecution engaged in misconduct by failing to provide him with a copy of Erin's police statement prior to her testimony. *See generally* Dkt. 45-1. Both claims arise from the same core facts as the timely filed claims, and, accordingly, both relate back for statute of limitations purposes.

## DISCUSSION

### I.   *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

A federal court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts. 28 U.S.C. § 2254(b)(1)(A). This requirement affords state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S.

19

722, 729 (1991)).  In other words, if the state court refused to consider an argument

because it was procedurally barred under state law, the argument is barred from federal

habeas review so long as the procedural bar is "adequate to support the judgment."

*Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker*, 458 F.3d

130, 138 (2d Cir. 2006)).  A petitioner's failure to comply with a state procedural rule

qualifies as such an adequate and independent state ground, provided that (1) the state

court actually "relied on the procedural bar as an independent basis for its disposition

of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (citation omitted), and (2) the state

procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466

U.S. 341, 348 (1984).

        The Second Circuit has "held repeatedly that the contemporaneous

objection rule" -- that state appellate courts will review only those errors of law that are

presented contemporaneously such that the trial court is "reasonably prompted" to

correct them -- "is a firmly established and regularly followed New York procedural

rule."  *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (collecting cases).  Hence, the

Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling

that the failure of a petitioner to object at trial rendered a claim unpreserved for

appellate review.  *See, e.g.*, *Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming the

denial of habeas relief where the petitioner's trial counsel failed to bring to trial court's

attention a claim that he later attempted to advance on appeal).  If a claim is

procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

## II.    *Analysis*

In the Petition, Wall contends that (1) the trial court committed prejudicial error by failing to instruct the jury on circumstantial evidence; (2) trial counsel was ineffective on several grounds; (3) Wall was deprived of a fair trial by the court's failure to direct the prosecution to produce Erin's statement, and the prosecution engaged in misconduct based on its failure to provide the statement to defense counsel; (4) the kidnapping and felony murder charges violated the double jeopardy clause; (5) the trial should have been severed from Lynch's; and (6) the prosecution coerced witnesses.  I address each claim in turn.

### A.    *The Jury Charge Claim*

First, Wall argues that the trial court should have instructed the jury on circumstantial evidence, and its failure to do so was prejudicial error.  Dkt. 1 at 4.  The Appellate Division considered the claim on direct appeal and concluded that it was unpreserved for appellate review and procedurally barred pursuant to CPL § 470.05(2). *Wall I*, 938 N.Y.S.2d at 450.  The Appellate Division determined, however, that the claim

was meritless in any event because, under New York law, "where a charge is supported with both circumstantial evidence and direct evidence, the trial court need not . . . instruct the jury" on circumstantial evidence. *Id.* Because the prosecution presented "direct evidence of [Wall's] guilt . . . [through] the testimony of the surviving kidnapping victim and the codefendant," the court held that Wall was not entitled to the circumstantial evidence charge as a matter of law. *Id.; see People v. Daddona*, 615 N.E.2d 1014, 1015 (N.Y. 1993).

Habeas relief is thus not available to Wall for his jury charge claim. For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly" state that its judgment rests upon a state procedural bar. *Whitley*, 642 F.3d at 286 (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)). Here, the Appellate Division clearly and expressly stated that Wall's circumstantial evidence jury charge claim was unpreserved for appellate review. *Wall I*, 938 N.Y.S.2d at 450. Moreover, Wall has failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered. *See Edwards*, 529 U.S. at 451 (citations omitted); *Coleman*, 501 U.S. at 748; *Carvajal*, 633 F.3d at 104.

Wall's claim fails on the merits in any event. As the Appellate Division determined, under New York law, a trial court need not instruct the jury on

22

circumstantial evidence where both direct and circumstantial evidence supports the charges. *Daddona*, 615 N.E.2d at 1015. That is the case here: McKoy -- the surviving victim of the kidnapping who was present for the duration of the drug deal in Coram and rode in the car with Wall and Lynch all the way to the Bronx -- testified extensively at trial. Finnerty, Erin, and Lynch corroborated McKoy's account.

Accordingly, because the case was not based solely on circumstantial evidence, Wall was not entitled to a circumstantial evidence charge as a matter of law. And even if there was an issue under state law, that question is not cognizable on federal habeas review, as "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Millan v. Keane*, 1999 WL 178790, at *9 (S.D.N.Y. Mar. 31, 1999) (rejecting habeas claim based on a purported error related to a jury instruction where "[n]o such instructions are required under federal law"). Wall's claim for habeas relief based on the trial court's failure to give a circumstantial evidence instruction to the jury is therefore dismissed.

### B.   *The Ineffective Assistance of Counsel Claims*

Next, Wall reasserts several ineffective assistance of counsel claims that he initially brought on direct appeal and in the Section 440 Motion. Specifically, Wall argues that trial counsel was ineffective for failing to (1) request a circumstantial evidence charge; (2) set forth an affirmative defense related to a traumatic brain injury

23

and other mental defects; and (3) call Lynch's girlfriend, Leah Reynolds, as a witness. For the reasons set forth below, all three claims are meritless and must be rejected.

In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (collecting cases). Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable . . . ." *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The standard to establish an ineffective assistance of counsel claim under New York law is lower than under federal law. *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017). In New York, a defendant must show only "that counsel failed to provide meaningful representation . . . ." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y.

24

2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400

(N.Y. 1981)).  Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state

standard, the defendant is not required to demonstrate that he was prejudiced by the

ineffective assistance.  *See Alvarez*, 125 N.E.3d at 120.

### 1.    The Circumstantial Evidence Jury Instruction

Wall contends that trial counsel was ineffective for failing to request a

circumstantial evidence jury instruction.  Dkt. 1 at 4.  Wall raised this claim for the first

time in his Section 440 Motion, *see* Dkt. 45-1 at 19-20, and the court denied it on the

merits, *see* Dkt. 45-3 at 2-3.

Because the state court disposed of this aspect of Wall's ineffective

assistance of counsel claim on the merits, "a federal habeas court simply reviews the

specific reasons given by the state court and defers to those reasons if they are

reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (The Supreme Court has "affirmed

this approach time and time again.").  Accordingly, this Court must accord the state

court's decision "substantial deference," *Fischer*, 780 F.3d at 560, and will only grant

habeas relief if the state court's decision was "contrary to, or involved an unreasonable

application of, clearly established Federal law," *Harrington*, 562 U.S. at 98.  The state

court's decision that Wall's ineffective assistance claim is meritless was certainly

reasonable.  As discussed above, under state law, Wall was not entitled to a

25

circumstantial evidence charge as a matter of law.  It follows that trial counsel cannot be held ineffective for failing to request the instruction.

2.      *Affirmative Defense*

Wall next claims that counsel was ineffective for failing to assert an affirmative defense of "mental disease or defect."  Dkt. 1 at 4.  Even though Wall filed a post-Petition Section 440 Motion, he apparently did not raise this claim in the Motion. *See generally* Dkt. 45-1 at 1-32.  This aspect of Wall's ineffective assistance claim is therefore unexhausted for purposes of habeas review because Wall has not "fairly presented" it to the state courts.  *See Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010). Generally, when faced with a "mixed petition" containing exhausted and unexhausted claims, a habeas court should consider staying the petition so that the petitioner can exhaust the claims in state court.  *Zarvela v. Artuz*, 254 F.3d 374, 380 (2d Cir. 2001).  But a habeas court may dismiss any claims if they are plainly meritless, even if they are unexhausted.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

On this record, Wall's claim that counsel was ineffective for failing to pursue a defense of mental defect or disease is plainly meritless.  There is nothing in the trial record suggesting any basis for such a defense.  *See People v. Naqvi*, 17 N.Y.S.3d 762, 780-81 (2d Dep't 2015) (rejecting defendant's ineffective assistance of counsel claim based on counsel's purported failure to advance an affirmative defense of extreme emotional disturbance because the record was "devoid of evidence that the defendant"

was influenced by emotional disturbance when he committed the crime). Considering

the lack of evidence in the record to support a defense based on Wall's purported

mental defects stemming from an earlier "traumatic brain injury," Dkt. 1 at 4, Wall

cannot "demonstrate[] the absence of strategic or other legitimate explanations for

counsel's allegedly deficient conduct" in failing to pursue the defense. *People v. Duffy*,

990 N.Y.S.2d 346, 349 (3d Dep't 2014). Accordingly, this aspect of Wall's ineffective

assistance claim is also rejected.

3.      *Failure to Call Leah Reynolds*

Finally, Wall claims that trial counsel was ineffective for failing to call

Lynch's girlfriend, Leah Reynolds, as a witness. Dkt. 45-1 at 11-18. Wall raised this

claim in his Section 440 Motion, *see id.*, and the court rejected it on the merits. Dkt. 45-3

at 2. We accord the state court's decision "substantial deference," *Fischer*, 780 F.3d at

560, and will only grant habeas relief if the decision was "contrary to, or involved an

unreasonable application of, clearly established Federal law," *Harrington*, 562 U.S. at 98.

Here, the state court's decision was reasonable, especially considering the

deferential scrutiny that applies to ineffective assistance of counsel claims on habeas

review. *Woods v. Etherton*, 578 U.S. 113, 117 (2016) ("When the claim at issue is one for

ineffective assistance of counsel, moreover, AEDPA review is doubly deferential.")

(internal quotation marks omitted). When a petitioner challenges matters of trial

strategy, such as the decision not to call a witness, "[a reviewing] court on a cold record

27

should not second-guess such decisions unless there is no strategic or tactical

justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir.

1998).

      Based on the record here, it is apparent that trial counsel's decision not to

call Reynolds was strategic because Reynolds's statement is consistent with the

prosecution's theory of the case.  Reynolds provided a written statement to the police in

which she placed Wall in Lynch's car following the July 16 drug deal and as the car

traveled through Queens and into the Bronx.  In other words, the record indicates that

Reynolds's testimony would have likely incriminated Wall and corroborated other

evidence.  *See* Dkt. 45-2 at 13-14; *see also, e.g.*, Dkt. 11-18 at 286 (law enforcement officer

testimony describing Wall's cell phone location on the night of July 16).  Accordingly,

this aspect of Wall's ineffective assistance of counsel claim also must be rejected.

      **C.**    ***Erin's Statement***

      Next, Wall claims he was denied a fair trial because he was not given an

opportunity to review Erin's written statement to the police, which the prosecution used

to impeach Erin on cross-examination.  Dkt. 1 at 5; Dkt. 5-1 at 16.  Wall raised this claim

on direct appeal and the Appellate Division agreed that Wall "was, as a matter of

fundamental fairness, entitled to a copy of a prior statement of a witness who testified

on his behalf at trial, as the prosecutor used that prior statement to impeach the witness

during cross-examination."  *Wall I*, 938 N.Y.S.2d at 450.  The court further held,

however, that the error was harmless.  *Id.*  Because the Appellate Division adjudicated

this claim on the merits, habeas relief is only available to Wall if the state court's

decision was unreasonable.

The Appellate Division's decision here was certainly reasonable and not

contrary to federal law.  There is no indication that the prosecution misrepresented the

contents of Erin's statement, or that defense counsel's cross-examination would have

been different had Wall seen the statement.  Habeas relief is thus unwarranted on this

basis because there was no denial of due process.

Considering the foregoing analysis, Wall's prosecutorial misconduct claim

related to the prosecution's failure to provide him with Erin's statement also fails.  Wall

brought this claim in his Section 440 Motion, Dkt. 45-1 at 21-24, and the court rejected it

as meritless.  Dkt. 45-3 at 2.  To grant relief based on prosecutorial misconduct, the

Court "would have to find that the prosecutor's [actions] constituted more than mere

trial error, and were instead so egregious as to violate the defendant's due process

rights."  *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998); *see Floyd v. Meachum*, 907

F.2d 347, 353 (2d Cir. 1990) ("The appropriate standard of review for a claim of

prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process,

and not the broad exercise of supervisory power.") (internal quotation marks and

citations omitted).

To be entitled to relief, Wall must show that the prosecution's failure to provide him with a copy of Erin's statement caused him "actual prejudice." *Tankleff*, 135 F.3d at 252. Wall cannot meet that burden here; although the Appellate Division held that Wall was erroneously deprived an opportunity to review Erin's statement, it also held that that error was harmless. *Wall I*, 938 N.Y.S.2d at 450. Such harmless error does not rise to a level of due process violation necessary for a finding of prosecutorial misconduct. Accordingly, this claim is also meritless, and Wall is not entitled to habeas relief on this ground.

### D.    *The Double Jeopardy Claim*

As he argued on direct appeal, Wall claims that the kidnapping and felony murder charges violated the double jeopardy clauses of the federal and New York state constitutions. Dkt. 1 at 5. The Appellate Division addressed the claim on direct appeal and held that it was unpreserved for appellate review, citing CPL § 470.05(2), and was meritless in any event. *Wall I*, 938 N.Y.S.2d at 450.

Habeas relief is thus unavailable to Wall. Here, the Appellate Division clearly and expressly stated that Wall's double jeopardy was unpreserved for appellate review. *Id.* Moreover, Wall has failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of

the federal claim were not considered.  *See Edwards*, 529 U.S. at 451 (citations omitted);

*Coleman*, 501 U.S. at 748; *Carvajal*, 633 F.3d at 104.

   The claim fails on the merits in any event.  The double jeopardy clause of

the Constitution protects against "multiple punishments for the same offense."  *Jones v.*

*Thomas*, 491 U.S. 376, 381 (1989).  To determine whether two counts violate a

defendant's right under the double jeopardy clause of the Fifth Amendment, courts

apply the "same elements test, also known as the *Blockburger* test."  *United States v.*

*Dixon*, 509 U.S. 688, 696 (1993) (internal quotation marks omitted).  If "each count

contains an element not contained in the other," the offenses "are not the same for the

purpose of double jeopardy."  *United States v. White*, 240 F.3d 127, 132 (2d Cir. 2001)

(quoting *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999)).

   *Blockburger* is satisfied here.  To prove Wall's guilt on each count, the

prosecution was required to prove elements that were not necessary for the other.  To

prove first-degree kidnapping, the prosecution had to prove that (1) Wall abducted the

victim, (2) the abducted victim died, and (3) the death occurred either "during the

abduction" or "before [the victim] is able to return . . . to safety."  NYPL § 135.25(3).  To

prove felony murder based on kidnapping, the prosecution had to prove that (1) Wall

abducted the victim, (2) that he "or another participant . . . cause[d] the death of

someone other than one of the participants" in the crime, and (3) that the death occurred

"in the course of and in furtherance of [the kidnapping] or of immediate flight therefrom."  NYPL § 125.25(3).

Blockburger is satisfied because the felony murder count required proof that Wall or another participant caused the death of someone other than one of the participants, whereas the kidnapping count required proof that the victim died. Moreover, the kidnapping count required proof that the abducted victim died, whereas the felony murder count required that anyone other than Wall or Lynch died.  Finally, while the felony murder count required proof that the death occurred in furtherance of the kidnapping or of immediate flight therefrom, the kidnapping count merely required proof that the abducted victims died during the kidnapping or before they were returned to safety.  Habeas relief is thus not available to Wall on this basis.

### E.      The Severance Claim

Wall argues that the trial court's failure to sever his trial from Lynch's trial entitles him to habeas relief.  Dkt. 1 at 7.  Because Wall never presented the claim on direct appeal or in his Section 440 Motion, it has not been "fairly presented" to the state courts and is unexhausted for purposes of habeas review.  See Bierenbaum, 607 F.3d at 47.  In any event, Wall's claim is plainly meritless and can nevertheless be dismissed. See Rhines v. Weber, 544 U.S. 269, 277 (2005).

"A defendant seeking to overturn a denial of a severance motion must show that he was so severely prejudiced by the joinder as to have been denied a fair

trial, not that he might have had a better chance for acquittal at a separate trial." *Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990).  A decision whether to sever a trial is "committed to the broad discretion of the trial court." *United States v. Alvarado*, 882 F.2d 645, 655 (2d Cir. 1989).  Wall cannot meet his burden of showing that he was denied a fair trial here.

While it is true that Wall was not present for the murders of O'Dierno and Santos, he was a key participant in the kidnapping felony that led to the murders.  As the evidence at trial revealed, Wall knew that Lynch was angry because he had been duped into paying $30,000 for worthless drugs.  Yet, Wall willingly assisted him.  He wielded a gun during the drive to the Bronx, said threatening things to Santos, O'Dierno, and McKoy, including "Fuck these guys," and was present when Lynch said that he was going to kill the men.  Wall was also present when Reynolds gave Lynch a bag full of bulletproof vests, guns, and drugs.

The record indicates there was good reason for the state court to try Lynch and Wall together -- much of the evidence implicated and applied to both defendants, and Wall's involvement started early on in the drug deal.  Accordingly, because Wall cannot show he was denied a fair trial because of the state court's failure to sever his trial from Lynch's trial, habeas relief is unavailable on this ground.

### F.     The Witness Coercion Claim

In his final claim for habeas relief, Wall contends that there was "coercion of [a] witness by [the] prosecution."  Dkt. 1 at 7.  This claim is also presented for the first

33

time in his Petition and is therefore unexhausted, but the claim is rejected because it is plainly meritless.  Wall's claim is wholly conclusory -- it is unsupported by references to the record or supporting facts.  For instance, though Wall claims the prosecution coerced an "eyewitness," he does not identify the witness by name.  Dkt. 1 at 7.  In any event, assuming Wall is referring to McKoy, there is no evidence in the record that McKoy was coerced by the prosecution to testify.  Accordingly, the claim is meritless and must be rejected.

## CONCLUSION

Wall has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied.  The Clerk of Court is respectfully directed to enter judgment accordingly.  Additionally, I decline to issue a certificate of appealability because Wall has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.  The Clerk of Court is respectfully directed to mail a copy of this memorandum decision and the judgment to Wall at his last address of record.

SO ORDERED.

Dated:      New York, New York
            September 13, 2024

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation

34